UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM EARL FISHER, | No. 1:17-cv-01189-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF THE COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Respondent. | |

## I.      Introduction

Plaintiff Tim Earl Fisher seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 14 and 15**.**  Having reviewed the record as a whole, the Court finds that the ALJ's decision is based an appropriate legal standards and supported by substantial evidence. Accordingly, the Court affirms the Commissioner's denial of benefits to Plaintiff.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 7 and 8.

## II.    Procedural Background

On February 26, 2014, Plaintiff protectively filed applications for disability insurance benefits, alleging disability beginning July 7, 2013.  AR 17.  The Commissioner denied the applications initially on July 9, 2014, and upon reconsideration on October 7, 2014.  AR 17.  On November 17, 2014, Plaintiff filed a timely request for a hearing.  AR 17.

Administrative Law Judge Robert Milton Erickson presided over an administrative hearing on September 9, 2016.  AR 30-64.  Plaintiff, represented by counsel, appeared and testified.  AR 30.  An impartial vocational expert, Joel Greenberg, also appeared and testified.  AR 30.

On February 28, 2017, the ALJ denied Plaintiff's application.  AR 17-24.  The Appeals Council denied review on July 7, 2017.  AR 1-3.  On September 5, 2017, Plaintiff filed a timely complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Doc. 1.

## III.    Factual Background

### A.    Plaintiff's Testimony

In April 2013, Plaintiff (born June 23, 1961) injured his back while trying to lift a heavy landscaping stone.  AR 69.  He testified that he could walk less than ten minutes before he needed to stop to rest.  AR 41.  Shortly after undergoing back surgery in April 2014, he began to experience numbness and shooting pain.  AR 41-42.  He experienced side effects from muscle relaxers and Percocet including drowsiness, dizziness and an upset stomach, and found it hard to concentrate.  AR 49, 54.

Plaintiff relied on others to drive him both locally and on longer trips to his doctor at the University of Southern California and to Las Vegas.  AR 42, 192.  On longer trips, he needed to stop every 45 minutes to an hour "to get out of the car and readjust [him]self."  AR 42.

Plaintiff enjoyed barbequing but could not stand more than ten minutes at a time.  AR 44. He was able to shop for groceries by leaning on a conventional shopping cart, but was unable to reach high or lift anything heavy.  AR 44-45.  (His doctors restricted him to lifting no more than ten pounds.  AR 51.)

2

## B. Medical Reports and Opinions

In July 2013, Plaintiff's primary care provider noted palpable left S1 tenderness and mild tenderness in straight leg raise. AR 273. Plaintiff was 68 inches tall and weighed 269 pounds.[2] AR 273. Physician's assistant Barry Massirio referred Plaintiff for magnetic resonance imaging to evaluate his lumbar spine. AR 273. Plaintiff's back pain continued to be observed in subsequent examinations. AR 275, 277. In October 2013, Massirio noted that Plaintiff was to "[c]ontinue [treating his low back syndrome] with ortho and physical therapy" and weight loss. AR 277. In November 2013, Massirio added ibuprofen to Plaintiff's back treatment. AR 279.

Neurosurgeon Patrick Hsieh, M.D., examined Plaintiff on September 11, 2013. AR 246. Plaintiff reported dull, aching, constant pain throughout the day, rated from 5 to 7 on a scale of 10. AR 246. The pain was along the waistline but radiated into Plaintiff's hamstrings and buttocks. AR 246. To date, treatment had been limited to anti-inflammatory medication. AR 246-47. Motor strength was 5/5. AR 247. Plaintiff was able to walk independently with a normal steady gait. AR 248.

Dr. Hseih's diagnosed degenerative spine disease with an L5-S1 pars defect with grade 1 spondylolisthesis. AR 248. The doctor determined that in the next three to six months, Plaintiff should participate in physical therapy and if that was not effective, a series of L5-S1 epidural steroid injections. AR 248. Plaintiff should also lose weight, which itself could relieve his back pain. AR 248.

When Plaintiff returned for a follow-up examination in December 2013, neither anti-inflammatory medication nor physical therapy had relieved his back pain. AR 250. Plaintiff retained full strength and a normal steady gait. AR 251. Dr. Hsieh opined that Plaintiff's pain likely resulted from the combination of nerve compression and spinal stability at L5-S1. AR 251. The doctor continued to recommend weight loss and possibly an L5-S1 epidural steroid injection.

///

---

[2] Plaintiff's weight fluctuated throughout the time considered in the application from 231 to 294 pounds. AR 273, 277, 279, 282, 285, 288, 290, 507, 549, 554, 567, 573.

AR 251. If these were ineffective in two to three months, Plaintiff could benefit from an L5-S1 fusion. AR 251.

Although Plaintiff had lost 25 pounds by his February 2014 appointment with Dr. Hsieh, he was still experiencing pain. AR 253. The doctor discussed the risks and benefits associated with fusion surgery, including additional risks associated with Plaintiff's weight. AR 254-55. Plaintiff elected to proceed with minimally invasive spinal fusion surgery. AR 254-55.

Plaintiff saw Dr. Hsieh for pre-operative counselling and underwent spinal fusion surgery on April 16, 2014. AR 256-63. Thereafter, Massirio treated Plaintiff's post-operative constipation and examined Plaintiff's incision. AR 288. When Massirio saw Plaintiff on May 23, 2014, Plaintiff was doing better and feeling stronger. AR 290.

Dr. Hseih examined Plaintiff on May 28, 2014. AR 299. Plaintiff was experiencing "a fair amount" of burning pain in his anterior incision. AR 300. However, the back incision was well healed and Plaintiff had no significant back pain. AR 300. "His bilateral leg pain and numbness have completely resolved." AR 300. Muscle strength was 5/5, and Plaintiff walked independently with a normal steady gait. AR 300.

Dr. Hseih opined that Plaintiff's "symptoms should continue to improve." AR 300. The doctor observed that Plaintiff "seem[ed] to have an exaggerated response to pain throughout this entire postsurgical course and I think that we can hopefully manage this pain medically." AR 300. He continued Plaintiff's prescriptions for Norco and Oxycontin, but directed Plaintiff to wean down his Oxycontin until he was completely off it within the next two to four weeks. AR 300.

On July 6, 2014, agency physician Libbie Russo, M.D., opined that Plaintiff was capable of light work with some additional limitations. AR 72. She summarized:

> 52 yr old claimant alleging back injury as of 7/07/13. LS MRI in 7/13 indicated moderate stenosis. He underwent conservative treatment with PT and epidural injections for pain relief before undergoing L5-S1 fusion on 4/29/14. 5/28/14 x-ray indicates stable fusion. Post-surgical exam dated 6/2/14 indicates full strength and sensation and the claimant is able to ambulate independently with a normal steady gait. ADLs were completed immediately after

4

surgery, and CLMT's condition was significantly improved since that time per his report to TS. He reported at the most recent exam that his bilateral leg pain and numbness have completely resolved, but does report ongoing pain at site of his anterior abdominal incision. TS indicates CLMT's sx will continue to improve.

AR 73.

On July 25, 2014, Massirio diagnosed low back syndrome and renewed Plaintiff's prescriptions for gabapentin and acetaminophen-oxycodone (Percocet). AR 361. Following an examination on August 20, 2014, Dr. Hsieh noted that although Plaintiff had been able to decrease his pain medications significantly, he was still experiencing "persistent back pain with radiation to bilateral anterior thighs" that precluded his returning to work. AR 363-64. Dr. Hsieh wrote:

It is unclear to me why he continues to have fairly debilitating pain. The surgical construct appears to be quite solid and stable with no signs of instability. However, there are potential concerns about the retrolisthesis at L4-5 and possibly adjacent segments related disease at L3-4, L4-5 segment that may be the cause of his pain. On the current imaging today, he is also noted to have a coccygeal fracture or coccygeal displacement that may be a chronic dislocation secondary to an old fracture. The current x-ray was able to show the tip of the coccyx which appears to be displace[d] compared to the prior study. This is difficult to assess as the prior studies have had a very limited view of the coccyx, particularly on his preoperative scans.

AR 364-65.

The doctor ordered MRI studies to study further possible edema or problems related to the coccygeal fracture, and referred Plaintiff to a pain management specialist. AR 365.

After administering the MRI, James Alan Cusator, M.D., reported that hardware was present at the L5-S1 spinal fusion where the central canal and neural foramina were widely opened and unobstructed. AR 447. Although Dr. Cusator observed mild degenerative changes in the remainder of the lumbar spine, he saw no prominent central canal or neural foraminal stenosis, no large disc bulge or protrusion, and no suspicious enhancement. AR 447. Similarly, the coccygeal segments showed mild degenerative changes but no fracture, subluxation, or acute

///

5

inflammatory changes. AR 448. The visualized sacral neural foramina appeared open and unobstructed. AR 448.

At a September 17, 2014, appointment with Massirio, Plaintiff reported his pain was 7/10. AR 458. He walked with a guarded gait and used a walker. AR 457.

On September 30, 2014, agency physician A. Khong, M.D., noted that with further healing and post-surgical treatment, Plaintiff should be able to perform light work with postural limitations by April 29, 2015. AR 82.

In support of his October 2014 request for reconsideration, Plaintiff reported that he was "very limited" and experienced pain so severe that he needed to lie flat to get relief. AR 78. His feet swelled, and he elevated them frequently. AR 78. He needed a walker for walking. AR 78.

At the November 13, 2014, and January 2, 2015, appointments with Massirio, Plaintiff's gait remained guarded but he was not using a walker. AR 496. Massirio observed continued tenderness of the sacral and coccyx area. AR 496, 498. Plaintiff told Massirio that he had a "broken tail bone." AR 498.

On January 28, 2015, Plaintiff saw Maxim Moradian, M.D., complaining of lower back pain, right leg numbness and sacral pain. AR 505. Plaintiff reported that over the past week his pain had ranged from 4/10 to 9/10. AR 505. An examination revealed a significantly limited range of flexion and extension in the lumbar region and multiple areas of tenderness to palpation. AR 507. The right sitting straight leg raise and bilateral facet stress test were positive. AR 507. After reviewing current x-rays and the most recent MRI results, Dr. Moradian found the spinal fusion stable and diagnosed chronic axial lower back pain, failed back surgery syndrome, probable right L4 and/or L5 radiculitis, lumbar degenerative disc disease, lumbar spinal stenosis, and lumbar spondylosis. AR 509. He ordered electrodiagnostic testing of Plaintiff's lower limbs, a series of steroid injections and continued medication (Neurontin and Percocet). AR 509-10. The doctor again educated Plaintiff on the importance of low impact exercise and weight loss. AR 510.

///

1    On April 3, 2015, Plaintiff reported no pain relief since the last appointment. AR 514.

2  The diagnosis was unchanged. Dr. Moradian scheduled an additional steroid injection and

3  continued the prescription for Neurontin. AR 517.

4    On October 9, 2015, Dr. Palencia conducted a trial of an SCS neurostimulator. AR 580.

5  Outcome of the SCS trial is not apparent from the record.

6    On July 20, 2016, Plaintiff saw Arturo Palencia, M.D., who had treated Plaintiff briefly

7  until Plaintiff lost insurance coverage. AR 567. In 2015, Dr. Palencia had provided back

8  injections which had been painful and provided incomplete relief for only a few days. AR 567,

9  575. Plaintiff had no treatment for pain since October 2015. AR 567. Earlier in July 2016,

10  Plaintiff became unable to get out of bed without a walker. AR 567. Plaintiff described low back

11  pain radiating into the backs of his thighs and numbness on the front of each thigh. AR 567. The

12  doctor observed that Plaintiff limped when walking. AR 568. His back was tender to palpation,

13  and range of motion was less than normal. AR 568. The back paraspinal muscles were in mild

14  spasm. AR 568. However, Plaintiff retained 5/5 strength in all regards. AR 568.

15    On August 4, 2016, Dr. Palencia declined to evaluate Plaintiff's physical impairments on

16  a form provided in connection with the application for disability benefits. AR 523. On August

17  10 and 17, 2016, Dr. Palencia administered diagnostic sacroiliac joint blocks to evaluate the pain.

18  AR 587, 588. Plaintiff noticed no benefit from the right injection and only a brief and minor

19  improvement on the left. AR 591.

20    After administering an MRI on August 18, 2016, Manjul Shah, M.D., observed:

21    (1) Postoperative changes between L5 and S1. There is mild-to-
22    moderate bilateral foraminal stenosis with no canal stenosis at L5-
     S1.

23    (2). There is mild-to-moderate canal and bilateral foraminal stenosis
     at L3-4.
24

25    (3) There is mild canal and mild-to-moderate bilateral foraminal
     stenosis at L2-3 and L4-5.

26    (4) There is mild canal stenosis with no cord compression at T11-
     12.
27

28
                                            7

(5) There is dependent edema in the subcutaneous soft tissues dorsally between L2 and S3.

(6) Otherwise negative MRI scan of the lumbar spine with intravenous contrast.

AR 596.

On August 31, 2016, Mark I. Williams, M.D., provided that following observations from x-rays of Plaintiff's lumbar spine:

(1) Lumbar spine fusion from L5 to S1 identified, no acute changes noted.

(2) Moderate L4-L5 DDD and mild diffuse spondylosis changes noted, with Schmorl's nodule formation.

(3) Laminectomy changes not identified.

(4) No significant malalignment noted.

(5) No evidence of spondylolisthesis elicited, with flexion or extension positioning.

(6) Normal excursion demonstrated above spinal fusion.

AR 598.

## IV.   **Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).  When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v.*

///

8

*Social Security Admin.*, 466 F.3d 880, 882 (9ᵗʰ Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9ᵗʰ Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9ᵗʰ Cir. 2008) (citations and internal quotation marks omitted).

**V.     The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.920(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. §§ 416.920(a)-(f).

**VI.    Summary of the Hearing Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 19-24.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 30, 2013.  AR 19.  Plaintiff's severe impairments included status post fusion of the lumbar spine with myofascial pain and obesity.  AR 19.  The severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926).  AR 20.  The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand or walk six hours in an eight-hour workday; push and pull consistent with the lifting just described;  never climb ladders, ropes and scaffolds; occasionally climb ramps or stairs; occasionally stoop, crawl, crouch, or kneel; and frequently balance.  AR 20-22.

Plaintiff was unable to perform his past relevant work.  AR 22.  However, jobs that Plaintiff could perform existed in significant numbers in the national economy.  AR 23. Accordingly, the ALJ found that Plaintiff was not disabled.  AR 24.

**VII.    The ALJ Provided Clear and Convincing Reasons for Rejecting Plaintiff's Pain Testimony Concerning His Back Pain**

Plaintiff contends that the ALJ erred in finding that Plaintiff's testimony lacked credibility without providing clear and convincing reasons for that finding.  The Commissioner responds that the ALJ properly discounted Plaintiff's testimony of disabling pain and other symptoms.   The Court finds that the ALJ appropriately considered Plaintiff's credibility in the context of the record as a whole.

///

10

1    An ALJ is responsible for determining credibility, resolving conflicts in medical

2    testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

3
     Determining the extent to which a claimant is credible is the province of the ALJ, who must
4
     consider the record as a whole in reaching his or her conclusion. *See Valentine v. Comm'r Soc.*
5
     *Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); SSR 16-3p. The ALJ's findings of fact must be
6

7    supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

8    An ALJ performs a two-step analysis to determine whether a claimant's testimony

9    regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014

10   (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must

11
     produce objective medical evidence of an impairment that could reasonably be expected to
12
     produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80
13
     F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's
14

15   "medically determinable impairments could reasonably be expected to produce the alleged

16   symptoms." AR 21. The ALJ did not find Plaintiff to be malingering.

17   If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ

18   may reject the claimant's testimony regarding the severity of his symptoms only if he makes

19
     specific findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at
20
     1014-15; *Smolen*, 80 F.3d at 1281. "If the ALJ finds that the claimant's testimony as to the
21
     severity of her pain and impairments is unreliable, the ALJ must make a credibility determination
22

23   with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

24   discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "[T]he

25   ALJ must identify what testimony is not credible and what evidence undermines the claimant's

26   complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). It is not sufficient for the ALJ

27

28
                                                11

to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346. "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346.

In this case, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and functional limitations of his pain and other symptoms were not fully consistent with the medical evidence. AR 20. The ALJ then acknowledged his responsibility to consider other evidence in the record to determine whether Plaintiff retained an ability to do work-related activities. AR 20.

For example, the ALJ noted that Plaintiff testified to pain and numbness in his back and radiating toward his legs and an inability to concentrate because of the pain relievers that he required. AR 20. However, Plaintiff could cook, go grocery shopping, care for a forty-pound dog, fold laundry, and do dishes. AR 20. Despite his allegations of great pain he initially took only anti-inflammatory medications to relieve palpable tenderness in the left sacroiliac joint and mild straight leg raise tenderness. AR 21. He was referred to a neurosurgeon whose examination found Plaintiff's condition was "essentially normal," with full 5/5 strength and a normal steady gait. AR 21. "[M]agnetic resonance imaging of the lumbar spine showed minimal grade I spondylolisthesis without significant central canal stenosis and a L5-S1 pars defect." AR 21. Accordingly, the neurosurgeon prescribed conservative treatment consisting of physical therapy and epidural steroid injections. AR 21. When Plaintiff reported getting no relief from conservative treatment, the neurosurgeon recommended the lumbar spine fusion despite nearly normal clinical findings. AR 21.

Immediately thereafter, Plaintiff reported improvements and complete resolution of his

12

back and leg pain and numbness. AR 21. He demonstrated full muscle strength, a normal steady

gait, and a well-healed incision. AR 21. X-rays showed minimal to mild degeneration of the

adjacent areas of Plaintiff's spine. AR 21. Nonetheless, Plaintiff soon resumed complaining of

back and leg pain. AR 21. Doctors referred him for pain management although examinations

revealed only mild to moderate tenderness and muscle spasms with normal; gait and station. AR

21.

In accordance with SSR 02-1p, the ALJ also considered Plaintiff's obesity, which not only

limited Plaintiff's ability to move and function at work, but exacerbated his back and leg pain.

AR 21-22. Plaintiff's physician had recommended that Plaintiff lose weight and become more

active. AR 22.

As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent

already required: that assessments of an individual's testimony by an ALJ are designed to

'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has

a medically determinable impairment(s) that could reasonably be expected to produce those

symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent

truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017)(internal citation

omitted)). *See also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.). Because a

"claimant's subjective statements may tell of greater limitations than can medical evidence

alone," an "ALJ may not reject the claimant's statements regarding her limitations merely

because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144,

1147-48 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989)). *See also*

*Bunnell*, 947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying

medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of

his symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* at 345 (internal quotation marks and citations omitted).

In this case, objective medical evidence indicated only mild abnormalities after surgery. AR 22. "His own neurosurgeon questioned whether his symptoms were consistent with clinical testing." AR 22. The ALJ found that Plaintiff did not persist with conservative treatment and resorted to using a medical device (walker) with no medical evidence that it was needed. AR 22.

Nonetheless, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of his or her analysis of the record as a whole, an ALJ properly considers whether the medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence").

Relying on *Brown-Hunter v. Colvin*, Plaintiff challenges the ALJ's reliance on the inconsistent medical evidence, arguing that setting forth the objective evidence is not the same as providing clear and convincing reasons why the pain testimony is not credible. 806 F.3d 487, 493 (9th Cir. 2015). In *Brown-Hunter*, the Ninth Circuit condemned hearing decisions in which the

14

ALJ made a "single general statement that 'the claimant's statements are not credible to the extent they are inconsistent with the above residual functional capacity assessment'" followed by nothing more than a general summary of the medical evidence of record. *Id.* at 493-95. This case is distinguishable from *Brown-Hunter*.

Refusing to extend *Brown-Hunter,* an Oregon court found that an ALJ's having contrasted information included in treatment records with the claimant's testimony concerning her symptoms and limitations was sufficient to meet the requirement of clear and convincing reasons. *Despinis v. Comm'r, Soc. Sec. Admin.*, 2017 WL 1927926 at *7 (D.Oregon May 10, 2017) (No. 2:16-cv-01373-HZ). "While the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to reasonably discern the ALJ's path." *Id.* at *6. The same distinction is valid here where the ALJ did not simply summarize medical records but considered the interaction between the medical evidence of record and Plaintiff's corresponding pain and dysfunction.

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair*, 885 F.2d at 603.

An ALJ may reject symptom testimony that is contradicted by or inconsistent with the record and, as long as other reasons are provided, lacking the support of objective medical evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)(holding that the ALJ did not err in rejecting Carmickle's testimony that he could lift ten pounds

///

15

occasionally in favor of a physician's opinion that Carmickle could lift ten pounds frequently);

*Rollins*, 261 F.3d at 857; *Tonapetyan*, 242 F.3d at 1148.

In addition, medications, treatments, and other methods used to alleviate symptoms are "an important indicator of the intensity and persistence" of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3); SSR 16-3p. For example, an ALJ may consider unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039; the use of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); and any other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.1529(c)(3)(vii).

On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. The Court will not second guess the ALJ's assessment of Plaintiff's credibility in this case.

## VIII.  Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Tim Earl Fisher.

IT IS SO ORDERED.

Dated:   **November 13, 2018**          _____ **/s/ Gary S. Austin**
                                                                  UNITED STATES MAGISTRATE JUDGE